**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

GEORGIA L. MENDOZA,      )    No. SA CV 11-1162-PLA
                           )
          Plaintiff,   )
                           )
         v.          )    **MEMORANDUM OPINION AND ORDER**
                           )
MICHAEL J. ASTRUE,       )
COMMISSIONER OF SOCIAL   )
SECURITY ADMINISTRATION,  )
                           )
         Defendant.  )
_____)

**I.**

**PROCEEDINGS**

      Plaintiff filed this action on August 4, 2011, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 9, 2011, and August 16, 2011.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 26, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 6, 1957.  [Administrative Record ("AR") at 69-70.]  She obtained a GED and has past relevant work experience as an appointment clerk, an insurance clerk, and a home attendant.[1]  [AR at 48-50, 64-65, 168.]

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 30, 2008, and protectively filed an application for Supplemental Security Income ("SSI") payments on April 29, 2008, alleging that she has been unable to work since July 3, 2006, due to severe sleep apnea, diabetes, gastroesophageal reflux disease, depression, cancerous polyps, and stomach problems.  [AR at 69-70, 140-45, 166-74, 196-207.]  After her applications were denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 71-77.]  A hearing was held on October 26, 2009, at which time plaintiff appeared with a non-attorney representative and testified on her own behalf.  [AR at 43-67.]  A vocational expert also testified.  [AR at 64-66.]  On December 18, 2009, the ALJ determined that plaintiff was not disabled.  [AR at 29-39.]  On February 14, 2011, the Appeals Council denied plaintiff's first request for review, but later set aside that decision.  [AR at 5, 16-21, 24.]  On May 27, 2011, the Appeals Council denied plaintiff's second request for review.  [AR at 5-10.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1]    At plaintiff's hearing before the ALJ on October 26, 2009, a vocational expert testified that, based on plaintiff's descriptions of her past work in the record and at the hearing, she has past relevant work experience as an appointment clerk, an insurance clerk, and a home attendant. [See AR at 48-50, 64-65, 168.]

1    In this context, the term "substantial evidence" means "more than a mere scintilla but less

2    than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

3    adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

4    1257. When determining whether substantial evidence exists to support the Commissioner's

5    decision, the Court examines the administrative record as a whole, considering adverse as well

6    as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

7    Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

8    must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala,

9    53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

10

11    **IV.**

12    **THE EVALUATION OF DISABILITY**

13    Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

14    to engage in any substantial gainful activity owing to a physical or mental impairment that is

15    expected to result in death or which has lasted or is expected to last for a continuous period of at

16    least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

17

18    **A.    THE FIVE-STEP EVALUATION PROCESS**

19    The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

20    whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

21    828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must

22    determine whether the claimant is currently engaged in substantial gainful activity; if so, the

23    claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in

24    substantial gainful activity, the second step requires the Commissioner to determine whether the

25    claimant has a "severe" impairment or combination of impairments significantly limiting her ability

26    to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

27    If the claimant has a "severe" impairment or combination of impairments, the third step requires

28    the Commissioner to determine whether the impairment or combination of impairments meets or

1    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2    Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3    If the claimant's impairment or combination of impairments does not meet or equal an impairment

4    in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5    sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

6    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

7    perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

8    prima facie case of disability is established.  The Commissioner then bears the burden of

9    establishing that the claimant is not disabled, because she can perform other substantial gainful

10   work available in the national economy.  The determination of this issue comprises the fifth and

11   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

12   n.5; Drouin, 966 F.2d at 1257.

13

14   **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

16   gainful activity since her alleged disability onset date of July 3, 2006.  [AR at 31.][2]  At step two, the

17   ALJ concluded that plaintiff has the severe impairments of diabetes mellitus, sleep apnea,

18   diverticulitis, gastroesophageal reflux disease ("GERD"), and obesity.  [Id.]  At step three, the ALJ

19   determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.

20   [AR at 33.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3]

21   to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c).[4]  Specifically, the

22   ALJ found that plaintiff "would be able to lift and carry 50 pounds occasionally and 25 pounds

23   _____

24   [2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security
      Act through December 31, 2011.  [AR at 31.]

25   [3]    RFC is what a claimant can still do despite existing exertional and nonexertional
26   limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27   [4]    20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting
      no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25
28   pounds."

frequently, would be able to sit, stand and walk for 6 hours in an 8-hour workday; would be able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but could never climb ladders, ropes and scaffolds, and must avoid fumes, odors, dusts, gases and poor ventilation." [AR at 34.]  At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as an appointment clerk, insurance clerk, and home attendant.  [AR at 38.]  Accordingly, the ALJ determined that plaintiff has not been disabled at any time from July 3, 2006, through December 18, 2009, the date of the decision.  [AR at 38-39.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ improperly failed to consider the lay witness statement of plaintiff's daughter; (2) the ALJ improperly discounted plaintiff's credibility; and (3) the Appeals Council erred by denying plaintiff's request for review following her submission of new evidence after the ALJ's decision.  [Joint Stipulation ("JS") at 2-17.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ improperly discounted lay evidence from plaintiff's daughter. [JS at 3, 5-6.]  Defendant contends that any error by the ALJ in failing to discuss plaintiff's daughter's statements was harmless.  [JS at 4-5.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect her ability to work.  Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4),  416.913(d)(4).  Lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d

1226, 1231-32 (9th Cir. 1987).  The ALJ may only discount the testimony of lay witnesses for

"reasons that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Nevertheless, an error is harmless where it is "inconsequential to the ultimate nondisability

determination."  Robbins v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 728 (9th Cir. 2011) (quoting

Stout, 454 F.3d at 1055-56).  "[T]he burden is on the party attacking the agency's determination

to show that prejudice resulted from the error."  McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir.

2011) (citing Shinseki v. Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009)).

"Where harmfulness of the error is not apparent from the circumstances, the party seeking

reversal must explain how the error caused harm."  McLeod, 640 F.3d at 887.  The reviewing court

can remand where the circumstances of the case show a substantial likelihood of prejudice from

the error -- "[m]ere probability is not enough."  Id. at 888.

Here, other than pointing out that plaintiff's daughter, Melissa Hernandez, "reported that

[plaintiff] often sleeps a lot and cannot get up," plaintiff does not attempt to specifically show how

the ALJ's alleged error resulted in prejudice.  [See JS at 3, 5-6.]  Nevertheless, the Court reviews

the circumstances of the case to determine whether there is a substantial likelihood of prejudice.

See McLeod, 640 F.3d at 888.

On May 28, 2008, Hernandez completed a Third Party Function Report concerning plaintiff.

[AR at 176-83.]  Hernandez stated that she sees plaintiff "maybe twice a month" when plaintiff

goes "to [her] house to visit." [AR at 176.]  Hernandez reported that plaintiff "sleeps all day" and

"isn't as active as she was before." [Id.]  She also stated, however, that plaintiff prepares meals

daily, cleans, irons, does the laundry, and cares for plaintiff's son, including by cooking for him and

doing his laundry.  [AR at 177-78.]  Hernandez wrote that plaintiff goes to church on a regular

basis and shops once a week for one to two hours at a time.  [AR at 180.]  The ALJ did not

discuss Hernandez's statements.  [See AR at 29-39.]

In his decision, the ALJ found that plaintiff's "high level of daily functioning," as evidenced

by plaintiff's statements about her daily activities, was a reason to find her allegations concerning

the intensity, persistence, and limiting effects of her symptoms not entirely credible.  [See AR at

35.]  The Court has concluded, discussed infra, that this reason cited by the ALJ to discount

plaintiff's credibility is legally adequate.  Moreover, Hernandez's statements regarding plaintiff's daily activities are consistent with plaintiff's own statements in that regard.  In fact, the only discrepancy between their statements is that Hernandez indicated that plaintiff shops once a week, whereas plaintiff stated in a Function Report completed on May 28, 2008, that she goes shopping approximately twice a month.  [AR at 185-92.]  Given that Hernandez's statements did not reflect that plaintiff is more limited than plaintiff herself alleged, and given that the Court has determined herein that the ALJ did not improperly discount plaintiff's credibility on the basis of her daily activities, plaintiff has not met her burden of showing that the ALJ's failure to address Hernandez's statements was not "inconsequential to the ultimate nondisability determination."  See McLeod, 640 F.3d at 887; Robbins, 648 F.3d at 728.  Remand is not warranted on this issue.

**B.   PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff also contends that the ALJ failed to properly evaluate her subjective symptom testimony.  [JS at 7-8, 12-13.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill, 12 F.3d at 918; see also Lingenfelter, 504 F.3d at 1036.  "[Q]uestions of credibility ... are functions solely of the [Commissioner]."  Morgan v. Comm'r of Social Security Admin., 169 F.3d 595, 699 (9th Cir. 1999) (internal citations omitted).  Thus, if properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At step one of the two-step credibility analysis, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. [AR at 35.]  The ALJ nevertheless concluded that "[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  [Id.]  At step two, then, as the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter, 504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834).

Here, while not all of the reasons the ALJ gave for discounting plaintiff's subjective symptom testimony are legally adequate, three of the reasons are supported by substantial evidence.  See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  First, the ALJ relied on plaintiff's statements concerning her daily activities -- both in her hearing testimony and in the May 28, 2008, Function Report she completed -- to find her allegations of fatigue and discomfort not credible.  [AR at 47-64, 185-92.]  The ALJ stated that plaintiff can bathe, dress, clean, cook complete meals and do the laundry (including for her sixteen-year-old son), and lift as much as a gallon of milk.  [AR at 35, 57, 59, 185-87.]  The ALJ also noted that plaintiff has no difficulties with sitting, can walk as much as 3 to 4 blocks, and goes grocery shopping and to her grandchildren's ball games. [AR at 57, 59, 185, 188-90.]  While plaintiff should not be "penalized for attempting to maintain some sense of normalcy in her life" (Reddick, 157 F.3d at 722), it is acceptable for the ALJ to consider plaintiff's daily activities in determining whether to credit her testimony regarding the severity of her symptoms.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  In this case, the ALJ found that plaintiff can perform medium work, which involves the ability to do a certain amount of lifting and carrying, with periods of standing, walking, and sitting.  See footnote 4, supra; see also 20 C.F.R. §§ 404.1567(c), 416.967(c) ("If someone can do

_____

[5]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

1   medium work, we determine that he or she can also do sedentary and light work."); 20 C.F.R. §§

2   404.1567(b), 416.967(b) ("a job is in [the] category [of light work] when it requires a good deal of

3   walking or standing, or when it involves sitting most of the time with some pushing and pulling of

4   arm or leg controls").   The tasks plaintiff can regularly perform at home -- cooking, cleaning,

5   shopping, and caring for her own needs and the needs of her son -- are thus likely to be

6   transferable to the environment of the workplace.  Fair, 885 F.2d at 603 ("if, despite [her] claims

7   of pain, a claimant is able to perform household chores and other activities that involve many of

8   the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to

9   conclude that the claimant's pain does not prevent the claimant from working."); Orteza v. Shalala,

10  50 F.3d 748, 750 (9th Cir. 1995); Magallon v. Astrue, 2011 WL 2791258, at *6 (C.D. Cal. July 15,

11  2011).

12      Next, the ALJ discounted plaintiff's credibility concerning her sleep apnea because he found

13  that plaintiff "has not been compliant with the recommendation to use the CPAP machine,"[6] noting

14  that "[s]he claimed at the hearing that she does not use the machine because 'it breaks often.'"

15  [See AR at 36, 50.] An ALJ may properly rely on an "unexplained or inadequately explained failure

16  to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective

17  symptom testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen,

18  80 F.3d at 1284) (internal quotations omitted); Social Security Ruling[7] 96-7p ("[a claimant's]

19  statements may be less credible if the level or frequency of treatment is inconsistent with the level

20  of complaints, or if the medical reports or records show that the [claimant] is not following the

21  treatment as prescribed and there are no good reasons for this failure"). Here, the ALJ noted that

22  plaintiff testified she is tired and falls asleep easily during the day.  [See AR at 36, 50.]  The ALJ

23  ─────────────

24      [6]   A CPAP (continuous positive airway pressure) machine has as its main parts: (1) a mask or
    other device that fits over the nose or the nose and mouth, which is held in place with a strap; (2)

25  a tube that connects the mask to the machine's motor; and (3) a motor that blows air into the tube.
    http://www.nhlbi.nih.gov/health/health-topics/topics/cpap/.

26      [7]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its
    own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   also noted that despite being prescribed a CPAP machine in as early as April 2005, plaintiff

2   testified that she "broke two" of the hose components and mask components because she "turned

3   so much and tossed in [her] sleep." [See AR at 36, 50, 350.]  Based on plaintiff's testimony that

4   she cannot work due to her sleep apnea, but that she stopped using the CPAP machine simply

5   because it broke up to four times over a four-year period (i.e., from April 2005 to the October 2009

6   hearing), it was reasonable for the ALJ to conclude that plaintiff "[was] not following the treatment

7   as prescribed and there [were] no good reasons for this failure."   SSR 96-7p; see also

8   Tommasetti, 533 F.3d at 1039.

9          Third, the ALJ concluded that plaintiff is not fully credible with regard to her diabetes

10   mellitus because she "is able to control her diabetes with proper medication." [AR at 36.]  The

11   effectiveness of a claimant's medications is a proper reason to evaluate the credibility of a

12   claimant's allegations concerning her subjective symptoms. See Bunnell, 947 F.2d at 346 (quoting

13   SSR 88-13).   Here, Dr. Carlos Sobral, plaintiff's treating physician[8], prescribed Actos and

14   Metformin to plaintiff to control her diabetes from as early as September 2006 to as late as July

15   2010. [AR at 172, 339, 369, 371, 373, 375, 377-79, 381, 385, 462, 493, 509, 511, 515, 518-19,

16   521-22, 524-25, 529, 532, 536, 539, 543-45, 547, 649-50.]  Between February 2007 and May

17   2008, Dr. Sobral prescribed plaintiff with 45 milligrams of Actos once a day, and 1000 milligrams

18   of Metformin twice a day. [AR at 369, 371, 373, 375, 377-79, 381, 385.]  Between June 2008 and

19   September 2009, Dr. Sobral reduced plaintiff's Actos prescription to 30 milligrams, once a day,

20   while plaintiff's Metformin dosage remained the same. [AR at 509, 511, 515, 518-19, 521-22, 524-

21   25, 529, 532, 536, 539, 543-45, 547.]  By July 2010, plaintiff was only taking 15 milligrams of Actos

22   once a day and 500 milligrams of Metformin twice a day. [AR at 649-50.]  Thus, the record shows

23   that Dr. Sobral reduced plaintiff's dosages of diabetes medication, which supports the ALJ's

24   conclusion that plaintiff's diabetes mellitus was controlled by medication.  Moreover, the Court is

25   not aware of any evidence in the record that plaintiff's diabetes mellitus was not controlled by her

26   medications, and plaintiff in the Joint Stipulation points to no such evidence.  "Where, as here, the

27   _____

28   [8]   Dr. Sobral's treatment relationship with plaintiff is discussed infra.

10

1    ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and

2    those findings are supported by substantial evidence in the record, our role is not to second-guess

3    that decision." Fair, 885 F.2d at 604; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

4         The ALJ's specific findings for rejecting plaintiff's allegations of fatigue and other subjective

5    symptoms were supported by the record, and must be upheld. See Green, 803 F.2d at 532.

6    Remand is not warranted on this issue.

7

8    **C.    NEW AND MATERIAL EVIDENCE**

9         Plaintiff argues that the Appeals Council failed to properly consider the following new

10   evidence submitted to it after the ALJ's decision was rendered: (1) a March 1, 2010, letter from

11   Dr. Sobral; (2) a December 20, 2010, letter from Dr. Sobral; and (3) records from several hospitals

12   dated between March 29, 2010, and January 10, 2011. [JS at 13-14, 16-17; AR at 5-10, 582-693.]

13   Plaintiff asserts that  Dr. Sobral's letters "support [the fact] that [plaintiff] is not able to work," and

14   that the newly submitted hospital records "document[] a severe mental impairment." [JS at 13.]

15        In considering a claimant's request for review of an ALJ's decision, the Appeals Council will

16   review the entire record, including new evidence if it is relevant to the time period on or before the

17   ALJ's decision. 20 C.F.R. §§ 404.970, 416.1470; Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.

18   1990) (reversed on other grounds).  It will then grant review of the case if it determines that the

19   ALJ's action, findings, or conclusions are contrary to the weight of the record evidence. 20 C.F.R.

20   §§ 404.970, 416.1470; Bates, 894 F.2d at 1064; Russell v. Bowen, 856 F.2d 81, 84 (9th Cir.

21   1988).

22        On federal review, this Court considers the materials submitted to and considered by the

23   Appeals Council in its decision denying plaintiff's request for review. See Lingenfelter, 504 F.3d

24   at 1030 n.2 (internal citations omitted).  To warrant remand on the basis of the evidence submitted

25   after the ALJ's decision, plaintiff must show that the evidence is material to making a disability

26   determination in her case and that she had good reason for submitting it after the ALJ's decision.

27   See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g)).  To be

28   material, the new evidence must bear "directly and substantially on the matter in dispute," and

plaintiff must show "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." Id. (internal quotations and citations omitted).

As to the two letters from Dr. Sobral, the Court first considers whether plaintiff has shown good cause for not submitting them until after the ALJ's decision. From November 21, 2008, until as late as the date of the hearing before the ALJ on October 26, 2009, plaintiff was represented in this matter by Cecilia Duran, one of her daughters, who is not an attorney. [See AR at 45, 83.] On December 18, 2009, the ALJ determined that plaintiff is not disabled. [See AR at 29-39.] Plaintiff, on her own, requested review of that decision on February 16, 2010, and then retained an attorney to represent her on August 31, 2010. [See AR at 17, 22-24.] On September 1, 2010, plaintiff's counsel informed the Appeals Council via letter that he had been retained by plaintiff, requested a copy of the hearing audio recording and all exhibits submitted to date, and asked for 25 days from the receipt of those items in which to submit a brief in support of a request for review. [See AR at 18.] After the Appeals Council denied plaintiff's request for a review on February 14, 2011, plaintiff's counsel sent a second letter to the Appeals Counsel, dated February 24, 2011, in which he indicated that he had not received the items requested in the September 1, 2010, letter, renewed the requests in that letter, and asked the Appeals Council to vacate its February 14, 2011, decision. [See AR at 17-21.] On March 25, 2011, the Appeals Council issued an Order setting aside its February 14, 2011, decision, stating that the requested materials would be sent as soon as they were duplicated, and providing plaintiff with an additional 25 days from the date the materials would be sent to submit more evidence or a brief in support of a request for review. [See AR at 16.] Thereafter, on April 15, 2011, plaintiff submitted additional evidence to the Appeals Council in support of her applications -- including the two letters from Dr. Sobral -- which was considered by the Appeals Council before it denied plaintiff's second request for review. [See AR at 5-10, 214-17, 665, 667.] Thus, plaintiff was not represented by counsel at the time of the ALJ's decision, and plaintiff did not have Dr. Sobral's letters in her possession at the time of the December 18, 2009, decision, as they are dated March 1, 2010, and December 20, 2010. The Court notes that where a claimant is not represented by counsel, the ALJ has a heightened duty to assist her in obtaining relevant evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

1  Cir. 2001) ("When the claimant is unrepresented, ... the ALJ must be especially diligent in

2  exploring for all the relevant facts.") (citing <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978)).

3  Here, despite records showing that Dr. Sobral treated plaintiff for four years, the record does not

4  reflect that Dr. Sobral's opinions regarding plaintiff's functional limitations resulting from her

5  impairments were ever solicited prior to March 1, 2010 (the date of his first letter), either by plaintiff

6  or by the ALJ.   Moreover, once plaintiff obtained counsel, her attorney submitted Dr. Sobral's

7  letters to the Appeals Council shortly after the first decision was set aside.   The good cause

8  requirement "often is liberally applied, where, as in the present case, there is no indication that a

9  remand for consideration of new evidence will result in prejudice to the Secretary."   <u>Burton v.</u>

10 <u>Heckler</u>, 724 F.2d 1415, 1417-18 (9th Cir. 1984).   Thus, the Court finds that plaintiff had good

11 cause for submitting the letters after the ALJ's decision.

12      Dr. Sobral's letters also satisfy the "materiality" requirement needed to warrant a remand.

13 First, as Dr. Sobral in the letters offers his opinion regarding plaintiff's ability to sustain full-time

14 employment, the letters bear "directly and substantially on the matter in dispute."   The record

15 reflects that Dr. Sobral treated plaintiff over a period of almost four years [<u>see</u> AR at 339-54, 368,

16 371-76, 378-80, 385-86], prescribed her with numerous medications for her diabetes, sleep apnea,

17 thyroid problems, sinus issues, cholesterol, depression, headaches, muscle aches, and GERD

18 [AR at 172, 201-02, 212-13, 339-54, 368, 371-76, 378-80, 385-86], and also prescribed her with

19 a CPAP machine and referred her to another physician for a sleep apnea consultation.  [AR at

20 350, 372.]   Finally, Dr. Sobral referred plaintiff to gastrointestinal specialists and for multiple

21 colonoscopies and endoscopies.  [AR at 203, 287-90, 319-20, 347-48, 366-67, 381-84.]  Based

22 on the length of the treatment relationship and Dr. Sobral's experience with plaintiff, Dr. Sobral had

23 the broadest range of knowledge regarding plaintiff's physical condition, which is supported by the

24 treatment records.  <u>See</u> 20 C.F.R. § 404.1527(d)(2); <u>see also</u> <u>Lester</u>, 81 F.3d at 833 ("The treating

25 physician's continuing relationship with the claimant makes him especially qualified to evaluate

26 reports from examining doctors, to integrate the medical information they provide, and to form an

27 overall conclusion as to functional capacities and limitations, as well as to prescribe or approve

28 the overall course of treatment.").   Thus, Dr. Sobral's opinion concerning plaintiff's ability to

1  maintain full-time employment, while not binding on the ALJ [see 20 C.F.R. §§ 404.1527(e)(1),

2  416.927(e)(1)], nevertheless relates to the matter in dispute in plaintiff's case -- whether her

3  impairments prevent her from sustaining gainful employment.  As such, Dr. Sobral's letters satisfy

4  the requirement of bearing "directly and substantially on the matter in dispute."  See Mayes, 276

5  F.3d at 462.

6        Moreover, there is a reasonable possibility that Dr. Sobral's letters would have changed the

7  outcome of the administrative hearing.  As discussed supra, Dr. Sobral saw and examined plaintiff

8  from as early as July 2004 to as late as May 2008, prescribed numerous medications to her, and

9  referred her to specialists for her sleep apnea and gastrointestinal problems.  Dr. Sobral stated

10 in his letters that plaintiff is "very limited, as it would be impossible to maintain or sustain ... full

11 time employment due to late/excessive absence from work because of her health issues."  [See

12 AR at 665.]  More weight is generally given to the opinions of treating physicians because they

13 "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

14 [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

15 evidence that cannot be obtained from the objective medical findings alone or from reports of

16 individual examinations, such as consultative examinations or brief hospitalizations."  See 20

17 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Although the determination of a claimant's ultimate

18 disability is reserved to the Commissioner [see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)], the

19 ALJ nevertheless would have been required to give specific and legitimate reasons supported by

20 substantial evidence in the record to reject Dr. Sobral's opinion that plaintiff cannot work.[9]  See

21 McAllister, 888 F.2d at 602-03 (remand warranted where ALJ failed to give adequately specific

22 and legitimate reasons for disregarding treating physician's testimony that the claimant was "fully

23 disabled for employment" due to a personality disorder).  Thus, there is "a reasonable possibility

24

25    [9]    Both a consultative examiner and a non-examining physician opined that plaintiff can do
26 light to medium work, contradicting Dr. Sobral's opinion that plaintiff cannot sustain full-time
    employment.  [See AR at 37-38, 407-11, 433-38.]  Nevertheless, "[t]he ALJ may not reject the
27 opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without
    providing 'specific and legitimate reasons' supported by substantial evidence in the record."
28 Rollins, 261 F.3d at 856 (citation omitted).

1    that [Dr. Sobral's letters] would have changed the outcome of the administrative hearing."[10]  See

2    Mayes, 276 F.3d at 462.[9]

3           Remand is warranted on this issue.

4    /

5    /

6    /

7    /

8    /

9    /

10    /

11    /

12    /

13    /

14    /

15

16    [10]  Courts in this Circuit have also reviewed de novo a decision by the Appeals Council

17    denying a claimant's request for review on the basis of new evidence, without applying the requirements of 42 U.S.C. § 405(g).  See, e.g., Bates, 894 F.2d at 1064; Ramirez v. Shalala, 8

18    F.3d 1449, 1451-54 (9th Cir. 1993); Brent v. Astrue, 2010 WL 3521788, *3-6 (C.D. Cal. Sept. 7, 2010).  The Court notes that in this case, reviewing the Appeals Council's decision de novo would

19    result in the same outcome -- remand would be warranted for the Appeals Council's failure to give specific and legitimate reasons for summarily rejecting Dr. Sobral's opinion.  See Ramirez, 8 F.3d

20    at 1453-54; Brent, 2010 WL 3521788 at *6.

21    [9]  As the ALJ concluded that plaintiff has not been disabled at any time from July 3, 2006,

22    through December 18, 2009, the date of the decision [AR at 38-39], plaintiff's other evidence submitted to the Appeals Council after the ALJ's decision -- hospital records dated between March

23    29, 2010, and January 10, 2011 -- appear to relate to plaintiff's condition after the ALJ's decision.  Thus, the Court declines to remand on the basis of those records.  See, e.g., 20 C.F.R. §§

24    404.970, 416.1470 ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

25    administrative law judge hearing decision."); Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008)

26    ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and

27    therefore does not meet the materiality requirement.").  However, if any of the new evidence relates to or is informative of plaintiff's condition after her disability onset date and prior to the

28    ALJ's decision, the ALJ should consider that evidence on remand.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to properly evaluate Dr. Sobral's letters submitted after the ALJ decision.   The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 17, 2012

_____
                    PAUL L. ABRAMS
         UNITED STATES MAGISTRATE JUDGE